IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WM Capital Partners 53, LLC**<br>**Plaintiff,**<br><br>v.<br><br>**Barreras, Inc.; Gables Towers, Inc.,**<br>**Defendants.** | Civil No. 17-1122 (ADC-GLS) |

**REPORT AND RECOMMENDATION**

   Pending before the Court is Plaintiff WM Capital Partners 53, LLC's ("WM") request for a temporary restraining order to enjoin the Puerto Rico Court of First Instance from enforcing its order granting Barrera, Inc.'s ("Barreras") request to oust WM from the Citi Towers Complex and Barreras from further pursuing such a request. Docket No. 130. WM further requests that Barreras be enjoined from interfering with the management and operation, the tenants and WM contractors in the Citi Towers Complex. The Court referred the matter to the undersigned for a Report and Recommendation. Docket No. 133. After considering the parties' briefs and the extensive procedural history in this case, the undersigned recommends that WM's request for a temporary restraining order be **DENIED**.

**I. Background**

   A brief procedural background for context. Barreras' predecessor (lessor) and the First National City Bank of New York (lessee) executed a Deed of Lease in the year 1960. The lease pertained to a parcel of land in Hato Rey and granted construction rights to the lessee. The agreement required the lessee to construct new buildings in the land, granting the lessee ownership of the new buildings for the life the lease. The lease provided that, upon its termination, the lessor would acquire ownership of the buildings without liability to the lessee. The Deed of Lease was recorded in the Puerto Rico Property Registry. The two buildings were built. A Deed of Construction, describing the two-building complex— known as the Citi Towers Complex— as separate and independent property subject to the leasehold rights in the Deed of Lease, was recorded in 1988. Gables Towers, Inc. ("Gables") purchased the Citi Towers Complex and was

assigned the lease in 2005. Gables financed the purchase with various loans from WM's predecessor[1], which were secured by mortgages on the leasehold interest and the Citi Towers Complex. See Docket Nos. 62 and 94.

In 2013, Barreras filed an action of eviction against Gables in the Puerto Rico Court of First Instance for failure to pay property taxes.[2] The case was eventually submitted to arbitration in Barreras, Inc. and Gables Towers, Inc., AAA No. 01 15 0003 5993. Id. Through arbitration, Barreras sought termination of the lease, Gables' eviction, and a determination of the ownership rights to the Citi Towers Complex. WM's predecessor was not a party to the case. WM's predecessor requested intervention claiming a statutory right to subrogate in Gables' rights as lessee. Id. The request was denied and WM's predecessor did not appeal the determination. Id. An arbitration award was issued on September 28, 2016. The award established that: (1) Gables breached the lease with Barreras, (2) Barreras validly terminated the lease on October 16, 2013, (3) Barreras was entitled to ownership of the Citi Towers Complex free of liens and encumbrances, (4) Gables was to be evicted, and (5) the parties would move the Puerto Rico Property Registry to record the transfer of ownership of the Citi Towers Complex to Barreras. Docket No. 27-27 at p. 30. The arbitrator did not consider WM's right of subrogation under Article 158(6) of the Puerto Rico Mortgage Act.[3]

Gables appealed the award before the Puerto Rico Court of First Instance in Gables Towers, Inc. v. Barreras, Inc., Civil No. K AC2016-1090. WM again sought intervention to no avail. The Puerto Rico Court of First Instance issued judgment on December 6, 2017, notified on December 18, 2017, confirming the award. Docket No. 27-34. Gables did not appeal. Neither did WM appeal the denial of intervention. The judgment confirming the arbitration award, and consequently the determination that Barreras was entitled to ownership of the Citi Towers Complex free of liens and encumbrances, became final on January 17, 2018 (the "2018 Judgment"). On February 21, 2018, the court issued an order directing the Property Registry to cancel the recording of the lease,

---

[1] R-G Premier Bank of Puerto Rico was the creditor of the Gables' mortgages. In April 2010, R-G Bank was closed by the Office of the Commissioner of Financial Institutions and the FDIC became RG-Bank's receiver. Docket No. 62.

[2] WM gained physical possession of the Citi Towers Complex in December 2014. Docket No. 91-1.

[3] Currently, Article 59(7) of the Real Property Registry Act of the Commonwealth of Puerto Rico, Act 210-2015 (hereinafter, "Article 59(7)").

cancel Gables' title over the Citi Towers Complex, and record Barreras' ownership of the Citi Towers Complex free from any liens and encumbrances. Docket Nos. 58-2 and 58-3. WM sought review of this order asserting that its mortgage rights would be cancelled in violation of its rights to due process. WM was not successful before the Puerto Rico Court of Appeals or the Supreme Court of Puerto Rico. Docket Nos. 46-1 and 70-3.

On March 28, 2019, this Court entered an Opinion and Order granting WM's request for summary judgment: (1) that WM subrogated Gables as Barreras' tenant under the lease and is entitled to all the rights and interests in and to the lease, (2) that WM's subrogation would last until the expiration of the lease, and (3) that Barreras and Gables should refrain from any action depriving WM of its rights under Article 59(7). Docket Nos. 26 at pp. 15 and 62. The Clerk of the Court issued judgment in favor of WM. Docket No. 63. But the Court did not issue a final declaration of the parties' rights. Instead, the Court asked WM to submit proposed declarations. Docket No. 62. Barreras appealed before the declarations were issued. Docket No. 94. The First Circuit Court of Appeals held that, because this Court never issued the sought declarations, it did not render a "final decision" and it lacked appellate jurisdiction to entertain the appeal. Docket 94. Therefore, as it stands today, this Court's Opinion & Order at Docket No. 62 is not final because its finality is contingent on the issuance of the declarations, which has not occurred. A request by WM to issue the declarations is pending at Docket No. 101. A request by Barreras to set aside the Opinion & Order is pending before the Court. Docket No. 107.

On February 4, 2020, WM filed a complaint before the Puerto Rico Court of First Instance in <u>WM Capital Partners 53, LLC v. Barreras, Inc.; Gables Towers, Inc, et al.</u>, SJ2020cv01220, seeking a declaration that the 2018 Judgment is null and void for failure to include an indispensable party.[3] Docket No. 86-1. On February 26, 2020, the court in <u>Gables Towers, Inc. v. Barreras, Inc.</u>, Civil No. K AC2016-1090 issued an order *nunc pro tunc* (effective date of February 21, 2018) setting forth all the titles, liens and encumbrances over Barreras' properties to be cancelled by the Property Registry. Docket Nos. 81-5 and 81-6. On November 30, 2020, the Property Registry cancelled WM's mortgages of the leasehold rights and the Citi Towers Complex. Docket No. 111-1 and 111-2. On February 14, 2022, Barreras moved the court to oust ("lanzamiento") WM from

---

[3] The Puerto Rico Court of First Instance issued judgment on March 3, 2022, notified on March 4, 2022, dismissing the complaint with prejudice. Docket No. 139-1. The dismissal is not final.

the Citi Towers Complex. Docket No. 137-4. The matter is pending before the court on request for reconsideration by WM. Docket Nos. 137-3 to 137-4. In sum, the only live issues before the Puerto Rico Court of First Instance are: (1) Barreras' request to oust WM from the Citi Towers Complex, and (2) WM's action for nullification of the 2018 Judgment. WM sustains that Barreras' request to oust WM from the Citi Towers Complex is in irreconcilable conflict with this Court's Opinion & Order at Docket No. 62, and that this Court's urgent intervention is warranted.

## II.   Discussion

A temporary restraining order is a provisional remedy that seeks to maintain the status quo until a full review of the facts and legal arguments is feasible. Servicios Legales de Puerto Rico, Inc. v. Unión Independiente, 376 F.Supp. 3d 163, 166 (D.P.R. 2019) (citations omitted). A temporary restraining order is to be issued sparingly; it is an "extraordinary and drastic remedy that is never awarded as of right." Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011); Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office, 649 F.2d 71, 76 n.7 (1st Cir. 1981). Trial courts have wide discretion. Sánchez v. Esso Std. Oil Co., 572 F.3d 1, 14 (1st Cir. 2009). But the burden rests entirely on the movant. Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 9 (1st Cir. 2012).

To prevail on a temporary restraining order, the movant must establish the elements of a preliminary injunction: (i) a likelihood of success on the merits, (ii) irreparable harm in absence of the relief, (iii) balance of equities tips in movant's favor, and (iv) issuing the remedy is in the public's best interest. Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (citation omitted). Likelihood of success on the merits is the *sine qua non* and most important part of the inquiry. Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 7, 10 (1st Cir. 2012) (citations omitted). The movant must establish a "strong likelihood" of ultimately prevailing on the claim. Id. An irreparable injury is one "that cannot be adequately compensated for either by a later-issued […] injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Río Grande Cmty. Health Ctr. v. Rullán, 397 F.3d 56, 76 (1st Cir. 2005). Only immediate future damages are relevant. Bourgoin v. Sebelius, 928 F.Supp. 2d 258, 269 (D.Me. 2013); Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) (mere possibility of damages insufficient). The balance of equities requires the court to consider "the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues." Mercado-Salinas v. Bart Enter. Intern. Ltd., 671 F.3d 12, 19 (1st Cir. 2011);

**WM Capital Partners 53, LLC v. Barreras, Inc.**
**Civil No. 17-1122 (ADC/GLS)**

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). And the public interests that must be considered are those "in the issuance of the injunction itself." Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 45 (1st Cir. 2010). That is, the Court must evaluate any potential harms to the public in the absence or the issuance of the requested relief.

Prior to discussing the WM's arguments on the four factors, the Court discusses WM's arguments that this Court has the authority to issue the restraining order sought— enjoining proceedings before the Puerto Rico Court of First Instance— on account of this Court's ancillary jurisdiction and the Court's power under the All Writs Act and the Anti Injunction Act. WM rests on the Opinion & Order issued by the Court at Docket No. 62. But the lacks the authority to issue the relief sought by WM.

WM sustains that this Court should issue the restraining order to enforce its ancillary jurisdiction. Even though federal courts have limited jurisdiction, residual federal jurisdiction is often retained "over post judgment enforcement proceedings flowing from their original jurisdiction over the action." U.S.I. Props. Corp. v. M.C. Construction Co., 230 F. 3d 489, 496 (1st Cir. 2000). Naturally, this presumes that there is a final order or judgment that can be enforced. And that ancillary jurisdiction is necessary to carry out such an enforcement. This jurisdiction is frequently exercised by courts "simply [as] a mode of execution designed to reach property of the judgment debtor in the hands of a third party." Id.; Burgos-Yantín v. Municipality of Juana Díaz, 909 F.3d 1, 6 (1st Cir. 2018)(ancillary jurisdiction properly invoked to collect on a judgment). However, the scope of ancillary jurisdiction is limited. Burgos-Yantín, 909 F.3d at 3. When the relief sought is "of a different kind or on a different principle than that of the prior decree", courts do not have ancillary jurisdiction. Peacock v. Thomas, 516 U.S. 349, 358 (1996). To determine whether ancillary jurisdiction is appropriate, courts have distinguished between post judgment proceedings that merely serve as a mechanism to execute an existing judgment and proceedings that raise an independent controversy with a new party to shift liability. Burgos-Yantín, 909 F.3d at 7; U.S.I. Props. Corp., 230 F.3d at 498.

WM argues that ancillary jurisdiction is appropriate to enforce this Court's Opinion & Order at Docket No. 62. The Court's Opinion & Order granted WM's request for summary judgment and held that WM subrogated in Gables' right to the lease for the life of the lease. Although a judgment was issued at Docket No. 63, in its Opinion at Docket No. 94, the First Circuit Court of Appeals held that this Court's Opinion & Order is not final or subject to appellate

5

review. In so holding, the First Circuit stated: "if a district court chooses to exercise its power pursuant to the [Declaratory Judgment Act], a decision granting summary judgment for a party **without an accompanying order declaring the specific rights of the parties will not constitute a "final decision" in declaratory judgment actions**." Docket No. 94 at p. 10 (citing Am. Interinsurance Exch. v. Occidental Fire & Cas. Co. 835 F.2d 157, 158-159 (7th Cir. 1987))(emphasis provided). The First Circuit thus held that the enforcement of the Opinion & Order is contingent on declarations that have yet to be issued. The ancillary jurisdiction of this Court cannot be invoked based on an order that is not final. Enforcement of the Court's ancillary jurisdiction at this juncture is premature.

WM also argues that the All Writs Act and the Anti Injunction Act empower the Court to grant the restraining order. The All Writs Act empowers a federal court to protect its jurisdiction by issuing all necessary writs. Asociación de Detallistas de Gasolina de Puerto Rico v. Shell Chemical Yabucoa, 380 F.Supp.2d 40, 43 (D.P.R. 2005); Ortiz-Bonilla v. Federación de Ajedrez de P.R., Inc., 734 F.2d 28, 37 (1st Cir. 2013). The statute provides that the Court can "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, the authority in the All Writs Act is not without limits.

The Anti Injunction Act imposes an absolute ban for federal courts to issue injunctions against state court proceedings unless one of three narrow exceptions apply. Mitchum v. Foster, 407 U.S. 225, 228-29 (1972). The purpose is to "forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977). The three exceptions are included in the statute, which provides that a federal court is prohibited from granting an injunction to stay proceedings in a state court, except as (1) expressly authorized by an act of Congress, or where (2) necessary in aid of its jurisdiction or (3) to protect or effectuate its judgments. 28 U.S.C. § 2283. Since federal intervention is prohibited except in these very narrow circumstances, doubts are to be resolved "in favor of permitting the state courts to proceed, which means that an injunction will only be upheld on a 'strong and unequivocal showing' that such relief is necessary." Atlantic Coast Line R.R.Co. v. Brotherhood, 398 U.S. 281, 297 (1970); Oriental Bank & Trading v. Pardo-González, 509 F.Supp.2d 127, 132-33 (D.P.R. 2007). To be sure, the three recognized exceptions to the Anti Injunction Act must be narrowly construed. Casa Marie, Inc. v. Superior Court of Puerto

Rico for Dist. of Arecibo, 988 F.2d 252, 261 (1st Cir. 1993) (citing Mitchum v. Foster, 407 U.S. at 228-29; Atlantic Coast Line R.R.Co. v. Brotherhood, 398 U.S. at 287).

WM argues that the Court can issue an injunction to halt state court proceedings under the "necessary in aid of jurisdiction" exception. The term "necessary in aid of its jurisdiction" means that "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." Atlantic Coast Line v. Broth. of Locomotive Engrs., 398 U.S. at 295. This exception permits federal courts to intervene in cases where proceedings in state courts would make the ongoing oversight of federal courts unmanageable. See e.g., Swann v. Charlotte–Mecklenburg Bd. of Educ., 501 F.2d 383, 384 (4th Cir.1974)(possibility of "conflicting orders from state and federal courts" in school desegregation case sufficient to warrant injunctive relief against state court under § 2283); Carlough v. Amchem Products, Inc., 10 F.3d 189, 197 (3rd Cir. 1993)(injunction found appropriate in complex class action where potential settlement was imminent and federal court invested considerable time in such efforts); In re Baldwin–United Corp., 770 F.2d 328, 337 (2d Cir.1985) (upholding injunction against state court actions to protect ability of federal court to manage and to settle multidistrict class action proceeding which was far advanced and in which court had extensive involvement); Winkler v. Eli Lilly & Co., 101 F.3d 1196 (7th Cir. 1996) (federal court managing multidistrict litigation authorized to enjoin parallel state proceedings to protect integrity of pretrial discovery orders). The exception has also been applied in *in rem* proceedings when the federal court has obtained jurisdiction over the *res* that is subject of both state and federal proceedings. García v. Bauzá–Salas, 862 F.2d 905, 909 (1st Cir.1988) (citations omitted); P.R.F., Inc. v. Philips Credit Corp., 1992 WL 385170 *2 (D.P.R.); James v. Bellotti, 733 F.2d 989, 993-994 (1st Cir. 1984)(citing Vendo, 433 U.S. at 641). WM asserts both modalities of the "in aid of jurisdiction" exception in support of its request.

WM claims that the "in aid of jurisdiction" exception applies because the enforcement of the order issued by the Puerto Rico Court of First Instance to oust WM from the Citi Towers Complex interferes with this Court's proceedings, threatening to disrupt the orderly resolution of the litigation before this Court. The Court disagrees. The Puerto Rico Court of First Instance order enforcing its 2018 Judgment and ousting WM from the Citi Towers does not impair the Court's ability to resolve this litigation by issuing the requested declarations or otherwise. Such

proceedings are not interfering with this Court's exercise of its own jurisdiction. And the "in aid of jurisdiction" exception may not be ascertained solely to "preserve" a case or controversy. See Atl. Coast Line R. Co., 398 U.S. at 294–96; Vendo, 433 U.S. at 642("[t]he mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the 'necessary in aid of' exception"); On Command Video Corp. v. LodgeNet Ent. Corp., 976 F. Supp. 917, 943 (N.D. Cal. 1997)(similarities in the matters, parties and facts in both actions not enough to find that parallel action interferes with federal jurisdiction); Adkins v. Nestle Purina PetCare Co., 779 F.3d 481, 485 (7th Cir. 2015)(court likely to reach judgment second cannot "jump the queue by enjoining the suit that is likely to reach decision first."); Zurich American Insurance Co. v. Superior Court of California, 326 F.3d 816, 825–27 (7th Cir. 2003)(state court potentially reaching decision first, making federal decision unnecessary, does not justify injunction); In Re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig., 1996 WL 683785 at *12 (E.D. Pa.)(parallel state court proceedings must disrupt federal proceedings; the mere potential that a state court could reach judgment first is simply not enough).

WM's arguments that the "in aid of jurisdiction" exception applies because these are *in rem* proceedings are also without merit. In its simplest form, *in personam* jurisdiction is the power of a court to enter judgment against a person. United States v. Obaid, 971 F.3d 1095, 1098–99 (9th Cir. 2020) (citation omitted). *In rem* jurisdiction is the power of the court to adjudicate rights over property. Id. There are three types of *in rem* actions: (1) *in rem*, when the court determines property rights corresponding to a particular thing for every potential rights holder, such as forfeitures and arrests of vessels; (2) *quasi in rem*, which allocates property rights as against particular named persons, such as actions to remove encumbrances on a title; and (3) attachment proceedings, where the property rights of the owner to the *res* are not in dispute, but the movant seeks to obtain the *res* in satisfaction of a separate claim. FleetBoston Fin. Corp. v. FleetBostonFinancial.com, 138 F.Supp. 2d 121, 132 (D. Mass. 2001). Neither of the actions at issue here can be considered *in rem*. The action pending before this Court is a request for declaratory judgment as to WM's subrogation rights under Puerto Rico law. Any judgment to be issued in this case would not determine the rights over a certain property but the rights of WM as creditor and mortgage holder, and its rights with respect to the Citi Towers Complex for the life of the lease. The action pending before the Puerto Rico Court of First Instance cannot be deemed *in rem* either. That action was initiated to

seek review of the arbitration award in favor of Barreras and against Gables. And, at this juncture, the action seeks to enforce the rights obtained by Barreras on account of the 2018 Judgment; ownership of the Citi Towers Complex free from liens and encumbrances and the consequential ousting of WM from the property. Regardless of ongoing eviction proceedings, the jurisdiction of the Puerto Rico Court of First Instance in that case was obtained to adjudicate personal rights and not the rights to a particular property. The eviction and action to oust WM is merely the execution of the 2018 Judgment. The "in aid of jurisdiction" exception that applies to parallel *in rem* proceedings does not extend to post-judgment enforcement proceedings in state court. See Rubygold Main Holdings, LLC v. Brian Gardner Carpentry, LLC, 2021 WL 231509, at *5–7 (D.N.H.) (Anti Injunction Act precludes injunctions "to prevent parties from levying on a writ of execution obtained in state court."); Atl. Coast Line R. Co., 398 U.S. at 287)("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."). Because neither action— the one before this Court nor the one before the Puerto Rico Court of First Instance— can be considered *in rem*, the exception to the prohibition of the Anti Injunction Act does not apply. See Vendo, 433 U.S. at 642 ("The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court"; parallel *in personam* actions do not interfere with the jurisdiction of either court). Moreover, even assuming that any or both actions at issue could be deemed *in rem*, the exception to the Anti Injunction Act would still be inapplicable in this case. The "in aid of jurisdiction" exception for parallel *in rem* matters applies only in cases where the federal court has obtained jurisdiction over the res *prior* to the state court action. Id. at 641; Fed. Prac. & Proc. Juris. § 4225 (3d ed.). The jurisdiction of the Puerto Rico Court of First Instance stemming from Gables' appeal of the arbitration award in favor of Barreras in Gables Towers, Inc. v. Barreras, Inc., Civil No. K AC2016-1090, predates the jurisdiction of this Court in the instant case which was filed in 2017.[4]

---

[4] WM also invokes the "strangers" exception to the Anti Injunction Act, which allows *third parties* to seek relief from federal court to enjoin a state proceeding if the third party is "a stranger to the state proceedings." García, 862 F.2d at 909. The "strangers" exception "presumably embraces federal plaintiffs who *deliberately bypass an available opportunity to intercede in pending state court proceedings*, since '[t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger'". Id. (emphasis provided). This exception is inapplicable here. WM actively advocated for intervention in the proceedings before the Puerto Rico Court of First Instance to no avail. WM even sought appellate review of the order for the cancellation of WM's liens, claiming violation to due process. WM was no stranger to state court proceedings.

In sum, the restraining order sought by WM cannot be obtained by exercise of the Court's ancillary jurisdiction or through the "in aid of jurisdiction" exception of the Anti Injunction Act. Indeed, the Anti Injunction Act bans this Court from granting such an injunctive relief to stay the effects of a final judgment issued by the Puerto Rico Court of First Instance. As such, this Court could deny WM's request without further consideration. See e.g., Rubygold Main Holdings, LLC v. Brian Gardner Carpentry, LLC, 2021 WL 231509, at *5–7 (D.N.H.) (if requested injunctive relief would violate the Anti Injunction Act, the relief must be denied). The Court nonetheless considers the four factors applicable to requests for temporary restraining orders below.

WM argues that the first factor — likelihood of success on the merits — weighs in favor of granting the restraining order because WM already succeeded on the merits when the Court issued its Opinion & Order and because this Court's Opinion & Order precludes the Puerto Rico Court of First Instance's order to oust WM from the Citi Towers Complex. WM's argument fails to consider the lack of finality found by the First Circuit. As discussed above, the First Circuit deemed that, without a formal declaration of the parties' rights, the Opinion & Order was not final and appealable. If the Opinion & Order is not final, WM has not succeeded on the merits. The question is thus whether WM is "likely" to succeed on the merits. WM sustains that this Court's Opinion & Order granting summary judgment in its favor and, consequently holding that WM subrogated in the rights of Gables under the Deed of Lease, precludes the Puerto Rico Court of First Instance's order ousting WM from the Citi Towers. However, this Court's Opinion & Order lacks the finality required for *res judicata* to come into play.[4] "It is well settled law that the doctrines of *res judicata* and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action *for which judgment has been rendered*". Núñez-Núñez v. Sánchez-Ramos, 419 F. Supp. 2d 101, 110 (D.P.R. 2006)(emphasis provided). Under federal law, for a claim to be barred by *res judicata* the following elements must be met: (1) a final judgment on the merits; (2) the prior action involved the same parties or their privies; and (3) the prior action involved the same claim. Id. A final judgment is also a requirement for a claim to be barred by collateral estoppel. Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 747 F. Supp. 2d 265, 272 (D.P.R. 2010) (citing In re Kane, 254 F.3d 325, 328 (1st Cir.2001)); see also Mach. Project, Inc. v. Pan Am. World Airways,

---

[4] This Court rejected Barreras' *res judicata* argument on different grounds. Docket No. 62 at pp. 16-18.

Inc., 220 F. Supp. 3d 152 (D. Mass. 2016)(issue must have been decided by a valid and final judgment). The First Circuit's holding that this Court's Opinion & Order is not final or subject to appellate review ends any inquiry as to *res judicata* or collateral estoppel. The Court need not delve further. Without a final judgment declaring WM's rights, WM's intended preclusive effect is non-existent.

WM will not be irreparably harmed without the temporary restraining order. According to WM it would suffer irreparable harm because WM will be ousted from the properties without allowing WM to assert its rights to subrogation, WM stands to lose millions of dollars, and WM's due process rights have been violated in the cancellation of its mortgage rights. Docket No. 130 at pp. 22-23. However, any damage to WM is not likely to occur in the immediate future. The property rights over the Citi Towers Complex and WM's mortgage rights over the property were finally adjudicated by the Puerto Rico Court of First Instance on January 17, 2018, when judgment affirming the arbitration award became final and unappealable, and subsequently when the Property Registry cancelled WM's liens effective February 21, 2018. WM's claims of due process violations are pending before the Puerto Rico Court of First Instance in WM's action seeking the nullification of the 2018 Judgment in WM Capital Partners 53, LLC v. Barreras, Inc.; Gables Towers, Inc, et al., SJ2020cv01220. The ongoing eviction process before the Puerto Rico Court of First Instance– which WM claims will cause the irreparable harm— is merely the consequence of the legal reality between the parties— that Barreras was granted the properties free of liens, and that cancellation of WM's mortgages has been effectuated.

WM argues that the balance of the equities favors the restraining order because Barreras is being paid rent, WM is maintaining the Citi Towers Complex and its tenants and is paying taxes. But the hardship to be suffered by WM is on account of a judgment issued by state court and halting its enforcement would undoubtedly harm Barreras as well, depriving Barreras of the benefit of exploiting its property pursuant to the 2018 Judgment. This factor is neutral.

Finally, WM sustains that public interest favors the issuance of a restraining order to promote finality and conclusion of litigation and because the proceedings before the Puerto Rico Court of First Instance have rendered unfair results which could chill banking and lending transactions in the future. While the Court acknowledges that ending litigations advances public interests, the argument cuts both ways. Public interest in finality applies to the proceedings before this Court and to those before the Puerto Rico Court of First Instance, and a restraining order will

not advance conclusion of litigation merely because proceedings are enjoined. Furthermore, there is a strong public policy against federal courts enjoining state court proceedings absent the very narrow exceptions previously discussed and rejected by the Court. Mitchum, 407 U.S. at 228-29; Federal Procedure Lawyers Edition §47:111 (Anti-Injunction Act promotes strong policy recognizing the independence of the states and their courts). The Court acknowledges that WM perceives the proceedings before the Puerto Rico Court of First Instance to have had unjust results or to have been contrary to its due process rights. However, this Court does not sit in review of those proceedings. Further, even if this Court were to issue the restraining order sought, the 2018 Judgment would stand. A restraining order by this Court will not reverse the 2018 Judgment nor the Puerto Rico Court of First Instance's order for cancellation of WM's mortgage rights. This can only be achieved through state court in WM's action for nullification of the 2018 Judgment.

### III.    Conclusion

Pursuant to the foregoing, the undersigned recommends that WM's request for a temporary restraining order be **DENIED**. This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have **fourteen (14) days** to file any objections to this Report and Recommendation. Failure to file timely and specific objections within the specified time waives the right to appeal this order. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F. 2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Services, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 19th day of April 2022.

s/Giselle López-Soler<br>
GISELLE LÓPEZ-SOLER<br>
United States Magistrate Judge